Case number 15-5121, Charles W. Ramsey Jr. Appellate v. United States Parole Commission Ms. Dyer for the Appellate, Mr. Lenitz for the Appellee Good morning, and may it please the Court, Beverly Dyer on behalf of Charles Ramsey. I'd like to reserve two minutes for rebuttal. Respondent and the District Court, both District Courts, in fact, agree that the Parole Commission lacked authority to incarcerate Mr. Ramsey as a parole violator on December 15, 2004, based on the offense to which he pled guilty on that date. The question before this Court is what follows from that outcome. First, no one disputes that the Parole Commission did not regain that authority on a later date. And second, neither the District Court nor Respondent has pointed to any instance in which the Parole Commission has revoked but not incarcerated. And certainly that is not what happened in this case. Third, the statutes and regulations on which Respondent and the Commission and the District Court relied do not support their positions. Those statutes do not authorize the Commission to revoke parole independent of incarceration. If the Parole Commission does not revoke parole independent of incarceration, then the Parole Commission does not have the authority to incarcerate Mr. Ramsey. And therefore, in this case, if it cannot revoke, it cannot forfeit credit for street time. We don't have to make that broad a holding, that you can't revoke without incarcerating. The issue, I think, is whether there was any conceivable basis on which they could have revoked Mr. Ramsey without incarcerating. Right? Isn't that the narrower point? The problem is they were prohibited from incarcerating persons with a plea agreement under purely paragraph 6. So I'm not looking right now at paragraph 5, although I would note that both the District Court and Respondent cite the inability to incarcerate as based on the offense to which he pled guilty, which is the 1995 offense at that time. But I just want to go, because at least as I read the regulations, they were doing the revocation, the one right after the plea, on the basis of his conviction for the cocaine offense. And the chart looks like that makes that at a minimum. I mean, they did the letter saying, look, there's a range there that maybe goes down to zero, but his offense was at a minimum of range 5, which would have been a minimum of 24 months, and I think was ultimately determined to be actually a Category 8, which has a minimum incarceration upon revocation of 100 months. So there was, am I right in reading that, that there was no chance once he was revoked that he wouldn't be incarcerated? That's correct. And I think that they held him in custody, and the revocation hearing occurred a year later in 2005. And at that point, they determined that his minimum was 180 months, but they applied a more punitive set-off time of 228 months. So they were going to hold him for 228 months and did, in fact, hold him for 2 1⁄2 years before the West Coast. And I think the question just under Paragraph 6, which everyone agrees applied here, is what's the total effect of their 2005 order? Can their 2005 order have some effect without the incarceration portion of it? And it's certainly not what they did. I mean, they incarcerated him. And so I don't think this Court can supplant that order with a new order saying, well, we think they would have not incarcerated him, they would have given him zero time had they recognized the impact of this plea agreement and the fact that they could not incarcerate him. The U.S. Attorney's Office. I'm not trying to get rid of the plea agreement, but I understand the apparent authority and reliance. Did they really have the authority to hinder him to this Paragraph 6? They had the authority to bind the government under many case decisions. Yeah, I understand. I'm not asking the principle of whether they're bound anyway, but weren't they overstepping their authority to hinder this? Well, I don't think it was a well-advised provisional plea agreement. You think they overstepped their authority, don't you? Well, I also think that that has been found by two district court judges. I understand that it's binding anyway, but I think the problem all arose here when the U.S. Attorney's Office put more into the plea agreement than they probably had authority within. But that plea agreement should be upheld under due process provisions. Have they on the record said that they did not consult with the Parole Commission? I know the district court in West Virginia found, or assumed that everyone just overlooked it, but did in fact... It's not in the record of this court that there was discussion about it, to my knowledge. And in the West Virginia court? Or in the West Virginia court about whether or not someone consulted with the Parole Commission Not to my knowledge on this record before the court. I'm just curious because it's flabbergasting. It's on the face of the PSR explicitly that this warrant was out there and was waiting for them. Right in front of everybody's face. How could it have been overlooked? That's what I just can't understand. I can't speak to what was going through their minds when they signed the plea agreement. Particularly, I can't speak to what was going through the government's mind at the time when they signed that plea agreement. But I have not ever spoken with counsel, and I have not actually asked Mr. Ramsey that question, so I don't know and I can't represent to the court what the discussion was that led to that term. But I don't think this court can go back on that term now. And if it was a windfall, it was one that Mr. Ramsey, according to two district courts, negotiated and bargained for in exchange for a guilty plea. And the government benefited from that, and he did not. And I think that for the parole commission to come along and say we can forfeit credit for street time in 2005 when we couldn't incarcerate him in 2004, it's keeping half of the – it makes no sense. It's not something that the regulations support, that the statute supports, or I think that the plea agreement supports. And I think if this court does not agree with us on that point, then I think it needs to interpret Paragraph 5 of the plea agreement, or it needs to interpret the West Virginia's interpretation of Paragraph 5 of the plea agreement. I think that's a question. Is there any sense in which one would revoke street time without incarcerating, for example, just extending the parole period? Okay, we're starting day one now on parole all over again, or does it just always come with incarceration? So really a court or the commission could come along and say we're just going to extend your sentence. So as of this date, you have to serve another 20 years or 10 years, or I don't know exactly how much it was. That devises every principle of sentence credit in which you get credit for each day you serve in prison or on parole. So that's not possible. So you have to have incarceration to have revocation, and they couldn't have incarceration. To have revocation is street credit. Correct. And I think I just would point out that Mr. Ramsey is 76 at this point. If he were to serve to his full sentence at 2025, he would be 85. And at that point, he would face a six-year special parole term until 2031, at which point he would be 91. Not that that affects the legal issues involved in this case. If the Court does not have other questions, I would reserve my time for rebuttal. Thank you. Mr. Lenners. Good morning, and may it please the Court, Dan Lenners of the United States. Excuse me. It's simply not true that Mr. Ramsey was required to serve additional incarceration were his parole to be revoked in 2005. As an initial matter, even though his guideline range, as calculated by the Parole Commission in 2005, was 180 months or more, that's merely a guideline. As the regulation at issue makes clear, there are guidelines, and the Commission has the authority to impose a sentence below the guideline range. So that below-the-guideline-range authority includes a sentence as low as zero additional months, but also includes a sentence. But he doesn't – I mean, it took a year before they even had the hearing, so he's going to be incarcerated at least while they have the hearing and while they go through the processes and then give notice, and there are time delays between the decision and the actual parole. So, no, he had to be incarcerated for the process to even work. Well, Your Honor, the regulations allow a revocation hearing to occur for a prisoner or for a parolee who has been subpoenaed before the Commission. No, I don't understand why we're talking about these generalities. That's not remotely what happened in this case. And everyone knew, given the seriousness of his offense and his history, that there was zero chance that he was going to have a zero sentence. And there was a warrant for his arrest. They weren't subpoenaing him. They had a detainer and a warrant hanging out there. So maybe in some hypothetical world we've got to deal with reality, and there was zero chance of that here. So doesn't that factor into our decision? Your Honor, the reason we're talking about this is because we're incredibly far down the rabbit hole. Because Charles Ramsey is arguing that due to what the West Virginia District Court found to be an ambiguity in the plea agreement that required his immediate release, that he should receive the additional windfall of never being on parole again. The windfall, his deal, his deal, what he was trading for his guilty plea, was what's spelled out in paragraph 6. And that is he will not be returned to another jail facility. He will start supervised release. It's not a windfall when he says, excuse me, you got your half of the bargain. I would like to get my half of the bargain. It's a plea agreement that nowhere discusses parole. Nowhere discusses his 1970s cases. Whose fault is that? That allows him. Whose fault is that? The U.S. Attorney's Office drafted the agreement, Your Honor. But that is under circumstances where supervised release is required to run concurrently with parole. It's under circumstances where revocation need not lead to incarceration under the conditions. There were no circumstances. Well, you can see that there was absolutely no circumstance, given the outstanding warrant for his arrest for parole violation that was on the face of the PSR, that there was zero chance that he was not going to be both arrested and detained and, given the nature of the underlying criminal conduct, going to be incarcerated for some period of time. Your Honor, the plea agreement guaranteed that he would not be further incarcerated. He could have been released from the cell block that day as the plea agreement promised. And he wasn't. That was what he was promised, and he wasn't. Yes, this is all counterfactual. But he's also arguing counterfactually. And if we're talking about that it was his understanding that his parole terminated or that he wasn't allowed to be revoked, he never expressed that understanding. I'm not talking about parole terminating. But that would continue. If it was, in fact, his understanding that his parole could not be revoked, he never expressed that understanding until 2010. How about his understanding that he was not going to be incarcerated for the conduct to which he had just made this guilty plea? He never expressed that understanding until 2010. He never raised it at his revocation hearing. It's on the face of the agreement. But, Your Honor, if you're asking about what Charles Ramsey's personal understanding was, at his revocation hearing in February of 2005, just two months after he signed this agreement, he never raised the fact that he shouldn't be incarcerated. Did he have an attorney for that? Do I have a cite for that? Did he have an attorney for that? He did have an attorney. And he never said? He never said, I shouldn't be revoked because I had this plea agreement. He never said that. Then he appealed. He appealed the commission's February 2005 decision within the commission to say, to argue for a more lenient sentence. He never raised his plea agreement. He filed a habeas petition in the Southern District of West Virginia. He never said that the plea agreement mandated his immediate release. The relief he requested in his habeas petition was a new revocation hearing to take into consideration mitigating circumstances. Was that with an attorney or was that pro se? That was pro se, Your Honor. But he never raised it. He never said it was my personal understanding that the parole commission could not revoke my parole. What the West Virginia District Court gave him relief beyond that, which he requested, granted his immediate release. And now he says not only should he have gotten immediate release, but that he should have been credited with all of this time that he was in jail as having been on parole. Well, what he's saying is I should not have been reincarcerated. I should not have been reincarcerated. And one part of that, and that's what the West Virginia Court agreed with. You should not have been incarcerated. You should have walked out as promised. And the only predicate for that loss of street time was that he was incarcerated for parole violation. The predicate for the loss of street time was revocation. So he makes the additional leap. I shouldn't have been incarcerated. And because it precluded incarceration, a reasonable person would understand that to preclude the commission from revoking. But that's not true. Revocation need not lead to further incarceration. Revocation could have led to an amount of incarceration that perfectly matched what he had been sentenced to in this case. The commission could have deviated. I'm sorry. Can you explain that to me one more time because this is what I'm trying to understand. And sentenced him to the approximately nine years in prison that he received the 1995 crime. And they could have made those run concurrently. It could have given him a concurrent sentence with his underlying district court sentence. So he wouldn't have received. But he didn't have a district court sentence because the 1995-96 conviction was overturned. It was reinstated during the plea agreement. Okay. This is actually important for me to understand because if there's some way that they could have denied him the street time credit while still complying with the agreement. That's what I'm trying to understand. Let him walk out, not incarcerated him as the West Virginia court ruled, but still extend, just undo all the time he'd spent out on parole and start day one? Yes, Your Honor. There are two ways. The parole commission could have revoked, denied street time, but sentenced him to zero. The guidelines make clear that zero is within the guidelines, that revocation does not necessarily mean reincarceration. It usually does, but not necessarily. Revocation is not the equivalent of reincarceration. So one thing they could have done is revoked, sentenced him to zero, but denied him credit for street time. A second way. Okay. This is what I want to understand. Imagine they had done that, and imagine they had done it through a subpoena instead of a warrant for his arrest. So they subpoena him on December whatever, 2004. As he's walking out, they hand him a subpoena, come to this hearing. Okay? And so he's out, he starts his supervised release, he shows up for the hearing, and at that point they could have revoked and done what? Imposed, they could have done, they imposed an additional sentence of zero. Uh-huh. And still? And denied credit for street time based on his conviction. Okay. So then what would the effect of that denial of street time credit? Would that mean all those years that he'd spent out on the street on parole would be canceled, and it would be as if his first day of parole for the 1970s offenses started the day of that hearing? Yes, Your Honor. And that's how parole works. I mean, it may strike Your Honors as unusual given our current system. Unusual. That's how parole works. A conviction allows the parole commission to deny time for street time. So if you're convicted of a new crime on your last day of parole, the regulations allow the commission to say you shouldn't have committed a new crime, you could have been in jail this entire time, you're at conditional liberty, and the consequence of you committing this new crime is that you don't get credit. That's clear? That's not unusual at all in the good or bad old days when parole was the norm. Precisely, Your Honor. That's how parole works. The second way the commission could have done it is, even if it didn't want to sentence him to zero time when it revoked, it could have sentenced him to an identical nine years to run concurrent with the sentence he received from the district court. And so he would have been given a sentence. But the sentence he got from the district court was time served. I don't understand that. His time served was nine years. So it could have said you get the exact number of days in prison to run concurrent, and he would have been released on the same day, having been given a sentence of incarceration greater than zero. Well, why would they do that? Why would they just say zero? I don't understand why they would do that. Well, Your Honor. That seems silly. But Your Honor said there's no. I think you know alone. As far as the parole commission, not to be silly. Your Honor said that there's no. No, because they were sentenced to you for nine years, but you were already done. So they might do that. Well, so in theory, they might do that if they think a state court or district court has given a sentence longer than necessary for the underlying conduct because they're considering what additional incarceration is. Your point is that they could have said time served just like the court said. They could have said time served just like the district court. And that would have been a sentence of incarceration greater than zero, which would have, after a revocation, that would have led to no additional jail time. And it proves the point that the plea agreement's prohibition on further incarceration was not a prohibition on revocation. And that's his whole argument. His whole argument is that a reasonable person would read a plea. Would you concede that the U.S. Attorney's Office overstepped in this plea agreement? I think the Fourth Circuit called a similar circumstance something like inappropriate. I'll take that as a yes. Overstepped, but the district court in West Virginia found that no one considered what the parole commission might do. Is that your position that you have, because it strikes me as just extraordinary that this could have been nobody noticed given that it was on the face, right smack middle front page of the PSR, and again on the inside, that he had not a subpoena but a warrant out for his immediate arrest? And that's exactly what happened in the courthouse that day. What a coincidence. He didn't walk out. They were there ready to take him, and yet the government didn't know, hadn't thought about this? I have two answers. One is the attorney who signed the plea agreement is no longer in my office, and so I've not spoken with him personally. My second answer is that if Mr. Ramsey understood this plea agreement to have guaranteed that the parole commission would not act, he certainly didn't show that until 2010. He didn't show it at the revocation hearing. He didn't show it on appeal within the parole commission. He didn't show it in his pleadings before the West Virginia district court. The first time he raised that argument was in 2010. And so the suggestion that he understood that the parole commission wouldn't do anything is belied by his own actions. No, what I'm more worried about is what the government understood was going to happen. Was it making these types of representations knowing that it wasn't going to happen? I don't think there's any indication of government bad faith on this record, Your Honor. It may not be bad faith, but it's certainly not within the normal bounds of what U.S. attorneys do in a plea agreement. In fairness, this plea agreement does differ from the one that the Fourth Circuit looked at in Jurgendi. It differs from any that I ever saw. I'm sorry, Your Honor? It differs from any that I ever saw. It does seem to try to bind the parole commission and other people beyond the district. Now, the Paragraph 5 limits it to the district and what you're going to do. Paragraph 6 seems to speak to the whole government. I understand, and I'm not arguing with the defenders' proper position, that the U.S. got into this position and they are bound by it. But I don't see how the U.S. Attorney's Office can defend its conduct in entering into the agreement. I'm not defending the U.S. Attorney's Office's conduct, Your Honor. What I'm explaining is that the U.S. Attorney's Office in West Virginia did not appeal to the district court the magistrate's order that Mr. Ramsey immediately believes. I would point out that unlike the plea agreement at issue in the Fourth Circuit in Jurgendi, which explicitly attempted to bind the parole commission, that said under this plea agreement the parole commission will only consider a certain amount of cocaine that was smaller than that at issue in that case. This plea agreement said nothing about the parole commission, and in fact the West Virginia Well, but it said right before Paragraph 4, in all caps, mind you, the government's obligations, acknowledgments, and waivers, colon. And both 5 and 6 come after that. And we have the government obligating itself that he not be returned to any other prison facility. And he will, in exchange, fair words, be immediately eligible for supervised release,  But it does happen when you're on parole, Your Honor. And Paragraph 5, the West Virginia District Court found was explicitly clear that it only bound the U.S. Attorney's Office for the District of Columbia, and it only bound it Well, obviously there's an ambiguity created by Paragraph 6, right? Yes. Yes, Your Honor. If there are no further questions, we would ask that the question of the district court And ambiguities are resolved in favor of the defendant, right? And that ambiguity was resolved in the defendant's favor when he was granted immediate release. It is consistent with the general precedent that ambiguities, the U.S. Attorney's Office drafts the agreement, and they're construed liberally in favor of the defendant. Correct. And it was in this case, but he's attempting to create a further ambiguity where none exists to receive an additional windfall, which is the termination of his parole when, in fact, he should continue to be on parole. Does Ms. Dyer have any time left? That's what I thought.  Thank you, Your Honor. With respect to whether Mr. Ramsey raised this earlier, I would just point out that the West Virginia court described his claim before that court on Grounds 4 and 5. It says, under Grounds 4, he contends that the parole commission as part of the Department of Justice was bound by the plea agreement provision not to prosecute him further. Therefore, he asserts that he should have been released rather than incarcerated on the parole revocation. And that's on page 101 of the appendix. Did he make the street-time credit argument in that court? Well, he says bound not to prosecute him further based on his offense. He certainly made the paragraph 5 argument. I think that the street-time argument follows, and I was going to turn to that next. And it is raised certainly in the 28J letters and responses that were filed in the last couple of days as to whether revocation can ever be zero. And I would just point out that if the government is relying on a lesser-than-equal sign for its proposition that revocation can include zero, it would have been a simple matter for the commissioner or the writers of that regulation to put in zero to four months or zero to eight months. That that would have been the most natural way to state zero. Instead, they put in less than or equal to, and I would posit that one possibility for that is that it was more inelegant to say one day to four months or ten days to four months or whatever a positive number would have been that was less than one month. So I think that the less-than-equal sign certainly doesn't mean necessarily zero. I also would point out that if, as the government suggested, and this is all hypothetical and speculative, the commission in 2005 at a revocation hearing at which Mr. Ramsey attended by subpoena instead of warrant, and I would point out that his warrant said he would be released or he would be held in custody. But if they had at that point ordered, I think it was a 108-month sentence consistent with a time-served sentence in district court, then his street time would be forfeited back, I believe, to that point. And I don't know when it would start, and I don't think anybody has calculated the sentence that would result from a sentence that began with a set-off time that started at the beginning of the 1995 case. So we're getting into very complex territory here when we're speculating as to what the commission might have or could have done. All right. The court has no further questions. Thank you very much.
judges: Henderson, Millett, Sentelle